NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0096n.06

No. 12-3223

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jan 28, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| OMNI MANOR NURSING HOME, | ) | |
| | ) | ON PETITION FOR REVIEW |
| *Petitioner*, | ) | OF A FINAL DECISION OF |
| | ) | THE UNITED STATES |
| v. | ) | DEPARTMENT OF HEALTH |
| | ) | AND HUMAN SERVICES |
| UNITED STATES DEPARTMENT OF HEALTH | ) | DEPARTMENTAL APPEALS |
| AND HUMAN SERVICES, | ) | BOARD |
| | ) | |
| *Respondent*. | ) | O P I N I O N |

BEFORE:    COLE and DONALD, Circuit Judges; RUSSELL, District Judge.[*]

COLE, Circuit Judge.  The Centers for Medicare and Medicaid Services ("CMS") imposed a civil money penalty on Omni Manor Nursing Home ("Omni Manor") for failing to comply with several Medicare regulations over a twenty-eight-day period.  Both an administrative law judge ("ALJ") and the Departmental Appeals Board ("DAB") of the United States Department of Health and Human Services upheld the imposition of the penalty and its duration.  We affirm their findings and accordingly deny the petition for review.

**I.**

**A.**

Omni Manor is a skilled nursing facility in Ohio that participates in the Medicare program. As a condition of its participation, Omni Manor must abide by certain safety requirements set forth

---

[*] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

in federal statutes and regulations. *See* 42 U.S.C. § 1395i-3 (2010). The Ohio Department of Health (the "state agency") conducts periodic unannounced inspections—known as surveys—on behalf of the CMS and the Secretary of the United States Department of Health and Human Services (the "Secretary") to evaluate compliance with the requirements. *See id.* § 1395aa; 42 C.F.R. §§ 488.10(a)(1), 488.308(a). During these surveys, the state agency documents any discovered instance of noncompliance—known as a deficiency—as well as its scope and severity. 42 C.F.R. § 488.404(b). Federal regulations identify several severity categories for deficiencies, ranging from ones that result in "[n]o actual harm with a potential for minimal harm" on the low end to ones that result in "immediate jeopardy to resident health or safety" on the high end. *Id.* § 488.404(b)(1).

CMS has the authority to impose a civil money penalty (among other remedies) for any deficiency the state agency discovers and documents. *See* 42 U.S.C. § 1395i-3(h)(2). The amount is pegged to the relevant severity category, with a possible penalty of $50 to $3,000 per day for deficiencies that do not rise to the level of immediate jeopardy. *See id.* § 1395i-3(h)(2)(A)(ii); 42 C.F.R. § 488.438(a)(1)(ii). The penalty generally accrues until the date on which a "revisit" survey confirms that a facility has corrected all deficiencies. *See* 42 C.F.R. § 488.440(h)(1). The duration of the penalty may be reduced if a facility can demonstrate through "written credible evidence" that it made the necessary corrections on a date prior to the revisit survey. *Id.* §§ 488.440(h)(1), 488.454(e).

**B.**

With that background in mind, we turn now to the facts giving rise to this petition. The state agency conducted a periodic survey of Omni Manor that concluded on April 24, 2008. The survey

led to the discovery of several deficiencies, two of which are especially relevant here. The state

agency first documented an instance in which Omni Manor's staff failed to provide care to a resident

showing obvious signs of respiratory distress even though a physician had ordered the staff to keep

close tabs on the resident less than an hour earlier. The state agency also documented an instance

in which Omni Manor's staff failed to remove a painful urinary tract catheter from a resident until

long after it was medically necessary. As a result of these incidents, the state agency determined that

Omni Manor was noncompliant with 42 C.F.R. § 483.25, which requires a skilled nursing facility

to provide each resident with the kind of care needed to attain the highest practicable physical,

mental, and psychosocial well-being; and with 42 C.F.R. § 483.25(d), which requires a facility to

promptly discontinue the use of any medically unnecessary catheter. The state agency further

determined that Omni Manor was noncompliant with ten other regulations—resulting in a grand total

of twelve deficiencies.

CMS acted on these findings in a letter to Omni Manor dated May 6, 2008. Based on the

relatively less severe nature of the deficiencies, CMS imposed a civil money penalty of $550 per day

starting on April 24, 2008, and continuing until Omni Manor returned to "substantial compliance"

with federal regulations. Omni Manor responded by submitting a plan of correction ("POC") to

CMS with a list of ameliorative steps it intended to take. The state agency then conducted a revisit

survey on May 22, 2008. At this time, the state agency determined that Omni Manor had adequately

corrected all of its earlier deficiencies and thus achieved substantial compliance. Accordingly, CMS

lifted the per-day penalty as of May 21, 2008. CMS ultimately penalized Omni Manor $15,400 for failing to comply with applicable regulations over a period of twenty-eight days.

Omni Manor requested a hearing before an ALJ to contest CMS's determination. Omni Manor did not dispute the "factual and legal basis" for the penalty imposed, but did dispute the narrow issue of the penalty's duration. Omni Manor asserted that the period of its noncompliance ended on April 29, 2008—twenty-three days earlier than CMS had determined. The second ALJ assigned to the appeal found that Omni Manor had failed to prove its assertion and accordingly affirmed CMS's determination. Omni Manor then appealed to the DAB, which likewise affirmed. Omni Manor now petitions for our review of the DAB's decision under 42 U.S.C. § 1320a-7a(e).

**II.**

Omni Manor raises but one issue in this petition. It challenges the DAB's finding that the duration of the penalty imposed did not exceed the period of noncompliance. Omni Manor maintains, as it has since the beginning, that it returned to substantial compliance on April 29, 2008, rather than May 22, 2008.

**A.**

The DAB's findings of fact are conclusive "if supported by substantial evidence on the record considered as a whole." 42 U.S.C. § 1320a-7a(e); *see also Claiborne-Hughes Health Ctr. v. Sebelius*, 609 F.3d 839, 843 (6th Cir. 2010). This includes a finding that a skilled nursing facility has failed to substantially comply with federal participation requirements. 42 U.S.C. § 1395i-3(h)(2); *see also* 42 C.F.R. § 488.301 (defining "substantial compliance" as a "level of compliance with the requirements of participation such that any identified deficiencies pose no greater risk to

resident health or safety than the potential for causing minimal harm"). It also includes a finding that a facility previously noncompliant with participation requirements has returned to substantial compliance. *Id.* §§ 488.440(h)(1), 488.454(e).

Our review of the DAB's findings of fact is highly deferential. *See Golden Living Ctr. v. Sec'y of Health & Human Servs.*, 656 F.3d 421, 425 (6th Cir. 2011). Under the substantial-evidence standard, we may consider "whatever in the record fairly detracts from the weight of the evidence," but it is not our place to resolve evidentiary conflicts or questions of witness credibility. *Claiborne-Hughes*, 609 F.3d at 843. When it comes to the determination of the duration of a penalty in particular, we will reverse only if "left with a definite and firm conviction that the [DAB] committed a clear judgment error in reaching its conclusion after weighing the relevant factors." *Golden Living Ctr.*, 656 F.3d at 429 (citing *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002)).

**B.**

That brings us to the sole issue presented in this petition. The CMS determined that Omni Manor was noncompliant with certain regulations, including 42 C.F.R. §§ 483.25 and 483.25(d), as of April 24, 2008—the date of the state agency's initial survey—and did not achieve substantial compliance until the revisit survey on May 22, 2008. Omni Manor disputed the latter finding on administrative appeal. It argued that it made the necessary corrections and achieved substantial compliance by April 29, 2008. *See* 42 C.F.R. §§ 488.440(h)(1), 488.454(e). As proof, Omni Manor submitted written evidence of its CMS-approved POC, a declaration from its compliance director, records of disciplinary and re-training measures directed toward the staff members responsible for the deficiencies, and audit forms used to evaluate the staff's performance in several relevant areas.

The gist of Omni Manor's case was that it returned to substantial compliance immediately after meting out punishment and providing limited re-training for its staff. The DAB, like the ALJ before it, was not convinced. The DAB upheld the ALJ's conclusion that Omni Manor did not provide sufficient proof to demonstrate that it had returned to substantial compliance at some point prior to the revisit survey. The DAB found that Omni Manor did not prove that its staff received the training required under its POC before May 22, 2008, nor did Omni Manor prove that its staff implemented the training they did receive.

Omni Manor now argues that the DAB's decision is not supported by substantial evidence. It is well-established that the burden of proving a facility has resumed complying with federal regulations on any given date falls squarely on the facility. *See Golden Living Ctr.*, 656 F.3d at 425. Thus, Omni Manor asks us to hold not only that it met its burden to prove substantial compliance as of April 29, 2008, but that there is inadequate evidence in the record to support the DAB's conclusion to the contrary. This we cannot do. We affirm the finding that the duration of the penalty imposed did not exceed the period of noncompliance for two reasons.

First, Omni Manor failed to live up to the commitments made in its own POC by April 29, 2008. To address deficiencies under 42 C.F.R. §§ 483.25 and 483.25(d), Omni Manor's POC proposed re-training its entire nursing staff on how to assess a resident's change in condition and how to provide appropriate incontinence care. But the attendance sheets from those sessions indicate that many staff members never showed up. This fact is an especially significant one because Omni Manor itself—by virtue of its POC—held out proper re-training as a critical step in preventing the

recurrence of instances of the sort for which it was penalized. It is no answer to note as a general matter that a fully implemented POC is not a strictly necessary predicate to proving a return to substantial compliance. Indeed, re-training was *the* fundamental element of Omni Manor's POC, and as evidence of a return to substantial compliance it fails on its own terms. Because the burden remains on Omni Manor to affirmatively prove that it returned to substantial compliance by April 29, 2008—and not on the DAB to prove noncompliance in the period preceding the revisit survey on May 22, 2008—the DAB was justified in affirming the duration of the penalty.

Second, Omni Manor did not proffer the kind of proof that would tend to show it adequately corrected its deficiencies and achieved substantial compliance prior to the revisit survey. Consider the deficiency under 42 C.F.R. § 483.25. Omni Manor does not dispute that its staff's treatment of the resident in respiratory distress fell short of accepted standards of professional care, due in large measure to its staff's failure to obey a physician's explicit orders. One would thus expect evidence grounded in observation and evaluation to demonstrate that such failures would not recur—in other words, evidence reflecting the nature and magnitude of the deficiency. One would not expect evidence consisting only of more orders. Yet that is precisely what Omni Manor relies on: It proffers evidence of disciplinary measures and change-in-condition re-training but barely any that goes to whether its staff implemented the new orders. Given the practical impossibility of successfully monitoring and evaluating re-trained staff within the span of one or two days—the time-frame implicit in Omni Manor's return date—this omission is not particularly surprising. To its credit, Omni Manor did proffer evidence of "chart audits" used to ensure its staff properly

documented changes in residents' conditions. Even so, this alone is insufficient to convince us that the record as a whole undermines the DAB's finding that Omni Manor did not resume complying with regulations a mere five days after the state agency first discovered its deficiencies.

In sum, Omni Manor had the burden of proving it returned to substantial compliance on a date preceding the revisit survey. The DAB found that Omni Manor had not carried its burden because of significant shortcomings in the proffered evidence. Because we are not left with a definite and firm conviction that the DAB erred based on our review of the record, we likewise affirm the duration of the penalty.

**C.**

Omni Manor also argues that the DAB erroneously required Omni Manor to prove the absence of noncompliance for the period between April 29, 2008 and May 22, 2008—or, in its words, the DAB required it to "prove the negative." This argument is styled as an objection to the legal standard employed by the DAB. We may only reverse on an issue of law if the DAB abused its discretion. *Golden Living*, 656 F.3d at 425 (citing *St. Francis Health Care Ctr. v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000)). Here, the DAB did not. Omni Manor simply misunderstands the nature of the DAB's decision. It held nothing more than that the proffered evidence was inadequate to demonstrate a return to substantial compliance prior to the revisit survey on May 22, 2008. Given that the DAB placed the proper burden of proof on Omni Manor, we see no reversible error.

**III.**

For the foregoing reasons, we affirm the DAB's findings and accordingly deny Omni Manor's petition for review.